IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| ERIC JOHNSON | : | NO. 09-752 |

## MEMORANDUM RE: DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Baylson, J.                                                                   December 2, 2010

### I. Introduction

The Government filed a Motion to Admit Certain Proffered Testimony under Federal Rule Evidence 404(b) (ECF No. 32), and in his response to that Motion, Defendant filed a Motion to Suppress Incriminating Statements (ECF No. 33). At a hearing on November 23, 2010, counsel advised that a stipulation had been arrived at as to the source of the firearm, which is the subject matter of the indictment in this case, such that the Court will deny the Government's Motion for a 404(b) ruling as moot.

### II. Background

The Court held an evidentiary hearing on Defendant's Motion on November 23, 2010. The Government called FBI Agent Kevin M. Lewis, who testified to the following facts, which the Court finds to be credible. Agent Lewis initially interviewed the Defendant at his home in Elkins Park, Pennsylvania on March 27, 2009 as a possible informative witness in another investigation. At that time, Agent Lewis knew that the Defendant had an open criminal case in the Court of Common Pleas in Philadelphia (which was subsequently adopted by federal prosecutors and is the subject matter of the instant indictment). However, there was no specific

discussion of that case. Exhibit G-1 is the FBI's Form 302 concerning this interview.

Shortly after the instant indictment was returned, Agent Lewis and other law enforcement personnel returned to Defendant's home in Elkins Park, Pennsylvania on December 21, 2009 with an arrest warrant for the purpose of arresting Defendant on the instant indictment.

The circumstances of the arrest were not remarkable and Defendant was cooperative as he was being taken into custody. The firearm in his home was surrendered by his wife. Defendant was taken to FBI headquarters and placed in a conference room. Agent Lewis testified that he gave the Defendant the standard Miranda warnings, as reflected in Exhibit G-2. Agent Lewis testified that although he asked Defendant to sign the document, indicating that he was waiving his rights and agreeing to talk, Defendant refused to sign. Agent Lewis testified that Defendant did verbally waive his rights and say that he was willing to talk to the agents. Agent Lewis testified that Defendant then proceeded to give a lengthy verbal statement about the circumstances of his arrest on August 9, 2007 which led to the state court charges and to the current indictment. In the statement, Defendant asserts that the gun was planted by the arresting police officers and that one of the police officers struck him. See Exhibit G-3.

At the hearing on November 23, 2010, Defendant took the witness stand and denied that Agent Lewis had given him any constitutional warnings. Defendant could not recall wether he had given Agent Lewis the information which is contained in Exhibit G-3, Agent Lewis's Form 302 report.

Defendant asserts that Agent Lewis is not credible and furthermore even if he were, legal grounds warrant suppressing his statement. Specifically, the testimony showed that Agent Lewis was aware that Defendant was represented in the pending state court case by Louis Savino,

Esquire, his current counsel, both when Agent Lewis first visited Defendant's home on March 27, 2009 and when he returned on December 21, 2009 to arrest Defendant. Further, Defendant told his wife, as he was being arrested, to call Mr. Savino and alert him, and that Agent Lewis was aware of this communication between Defendant and his wife. Defendant argues that the circumstances were sufficient to alert Agent Lewis that Defendant was represented by counsel on the offense in the indictment, and that he could not be questioned without first having access to his counsel. Agent Lewis acknowledged knowing that Mr. Savino was Defendant's lawyer.

### III. Parties' Contentions

Following the hearing, the Court permitted Defendant and the Government to file supplemental letter briefs. In his letter, Defendant focuses on Maryland v. Shatzer, 130 S. Ct. 1213 (2010), and argues that the case is distinguishable for several reasons: Shatzer is a Fifth Amendment, not Sixth Amendment, case; there was no prior interrogation requiring a break in custody; and this case does not implicate Shatzer's concern with the custodial nature of prison.

The Government responds that the Ninth Circuit's decision in United States v. Harrison, 213 F.3d 1206 (9th Cir. 2000), on which Defendant relies in his Motion, was premised on a U.S. Supreme Court case which was subsequently overruled in Montejo v. Louisiana, 129 S. Ct. 2079 (2009), and, therefore, Defendant's reliance is misplaced. The Government contends that law enforcement officials may ask a represented defendant to waive his right to counsel, and the decision to waive need not be counseled.[1] In its initial response to Defendant's Motion (ECF No. 34), the Government argues that Montejo rejected a per se rule prohibiting consent to police-

---

[1] In his Motion, Defendant asserts that Montejo "in no way diminishes the rationale or holding in Harrison, or its applicability in the instant case." (ECF No. 33 at n.2.) Defendant, however, offers no argument in support of this contention.

-3-

initiated interrogations, and that Defendant waived his right to counsel during the December 21, 2009 interrogation.

## IV. Legal Standards

The Sixth Amendment to the U.S. Constitution guarantees a criminal defendant "the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. In particular, the Sixth Amendment guarantees the right to have counsel present at all critical stages of the criminal proceedings, including interrogation. Montejo v. Louisiana, 129 S. Ct. 2079, 2085 (2009). The right to counsel attaches at or after the initiation of adversary judicial criminal proceedings, such as by indictment. See United States v. Kirby, 406 U.S. 682, 688-89 (1972) (plurality). Attachment alone, however, does not guarantee the assistance of counsel – the criminal defendant must also invoke the right. Cf. McNeil v. Wisconsin, 501 U.S. 171, 175 (1991) ("The Sixth Amendment right . . . is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced . . . .").

But criminal defendants may waive this right, so long as the waiver is voluntary, knowing, and intelligent. Montejo, 129 S. Ct. at 2085. Waiver can be effectuated after law enforcement officials advise the defendant of his Miranda rights and the defendant agrees to waive those rights, "even though the Miranda rights purportedly have their source in the Fifth Amendment." Id. Further, "the decision to waive need not itself be counseled." Id.

The question is, "Was the defendant . . . made sufficiently aware of his right to have counsel present during [post-indictment] questioning, and of the possible consequences of a decision to forgo the aid of counsel?" Patterson v. Illinois, 487 U.S. 285, 292-93 (1988). If the accused receives Miranda warnings, he "has been sufficiently apprised of the nature of his Sixth

Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." Id. at 296. The waiver must also be voluntary, in the sense that is was a free and deliberate choice rather than the result of intimidation, coercion, or deception. Id. at 296-97; see Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government bears the burden of demonstrating the waiver was voluntary, knowing, and intelligent. Brewer v. Williams, 430 U.S. 387, 403 (1977).

V.  **Analysis**

   A.  **Right to Counsel**

Defendant has relied in his Motion on two Ninth Circuit cases – United States v. Harrison, 213 F.3d 1206 (9th Cir. 2000), and United States v. Willard, 919 F.2d 606 (9th Cir. 1990). At the outset, the Court can dismiss Willard, a case in which the defendant argued federal officers violated his Fifth and Sixth Amendment rights by interrogating him outside the presence of counsel. 919 F.2d at 608. In Willard, the defendant never invoked his right to counsel, despite receiving Miranda warnings. Id. at 609. Therefore, the Ninth Circuit found no error in the admission of the defendant's statements at sentencing. Id. In this case, Defendant contends he invoked his right to counsel when he retained present counsel in the related state prosecution.

Harrison, on the other hand, presents facts similar, but not identical, to those in the present case and sets out a test for determining whether certain statements were obtained in violation of the right to counsel. 213 F.3d at 1213. In October 1996, a grand jury began investigating a drug ring in which Harrison was allegedly involved. Id. at 1208. In preparation for his subpoenaed appearance before the grand jury, Harrison retained an attorney, who communicated with the U.S. Attorney's Office on several occasions before and after Harrison's

appearance. Id. On October 2, 1997, the grand jury indicted Harris on two charges. Id. After his arrest, Harrison was advised of and waived his Miranda rights. Id. FBI agents then interrogated Harrison, who made inculpatory and false exculpatory statements. Id. at 1208-09.

The district court granted Harrison's motion to suppress, concluding that Harrison was represented by counsel at the time of the indictment. Id. at 1209. Consequently, the FBI agents were required to communicate through Harrison's counsel, rendering his waiver invalid. Id. On appeal, the Ninth Circuit affirmed the suppression, holding that "when there is a close nexus between the focus of a pre-indictment investigation and the ultimate charges brought in the indictment, a defendant's ongoing relationship with counsel that is known (or should be known) by the government invokes the Sixth Amendment right to counsel once that right attaches." Id. at 1213. Thus, the Ninth Circuit concluded that Harrison's right to counsel attached at the time of his indictment and that he preemptively invoked his right when he sought representation regarding his grand jury appearance. Id. at 1215.

Significantly, prior to reaching this conclusion, the court noted the similarity of Harrison's facts to those in Michigan v. Jackson, 475 U.S. 625 (1986), which held that if a defendant asserts a right to counsel at an arraignment or similar proceeding, any subsequent waiver of that right is invalid. Harrison, 213 F.3d at 1212; see Jackson, 475 U.S. at 636. In fact, Jackson served as the basis for Harrison's argument. Harrison, 213 F.3d at 1210.

Since the Ninth Circuit decided Harrison in 2000, however, the Supreme Court overruled Jackson. See Montejo v. Louisiana, 129 S. Ct. 2079, 2091 (2009). The Court determined that Jackson creates an unworkable rule because it does not add much to existing protections, id. at 2090, but carries the consequences of invalidating freely given confessions by suspects who

received and waived their Miranda warnings and deterring law enforcement from trying to obtain voluntary confessions, id. at 1290-91 (noting voluntary confessions are an "unmitigated good").

After Montejo, a defendant is left with the following protections for their right to counsel:

> Under Miranda's prophylactic protection against self-compelled incrimination, any suspect subject to custodial interrogation has the right to have a lawyer present if he so requests, and to be advised of that right. Under Edwards' prophylactic protection of the Miranda right, once such a defendant has invoked his right to have counsel present, interrogation must stop. And under Minnick's protection of the Edwards right, no subsequent interrogation may take place until counsel is present, whether or not the accused has consulted with his attorney.

Id. at 2089-90 (citations and quotation marks omitted). According to the Supreme Court, "[t]hese three layers of protection are sufficient. . . . [A] defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the Miranda warnings. At that point, not only must the immediate contact end, but 'badgering' by later requests is prohibited." Id. at 2090. Such protections are sufficient before and after arraignment, rendering Jackson superfluous. Id.

In an even more recent case, the Supreme Court again addressed the right to counsel, this time the rule from Edwards v. Arizona, 451 U.S. 477 (1981), prohibiting law enforcement officers from re-initiating an interrogation after the suspect invokes his right to counsel until counsel is made available or the suspect himself re-initiates communication. See Maryland v. Shatzer, 130 S. Ct. 1213, 1217, 1219 (2010). The Court held the Edwards protection of the Miranda rights does not extend into perpetuity, but ends after there has been a break in custody for fourteen days. Id. at 1222-23. However, the suspect retains his right to refreshed Miranda warnings, and may again choose to invoke or waive those rights. See id. at 1223 n.7.

Under these principles, the Court concludes that Defendant's statements need not be

suppressed. Defendant invoked his right to counsel for the state court proceedings; however, that did not preclude future interrogations. Montejo overruled Jackson, thereby extinguishing a presumptive invocation of the right to counsel once Defendant secured counsel in the related state prosecution.

After the federal indictment, Defendant's right to counsel attached. At no time did he invoke that right, as he was advised was his right, during the December 21, 2009 arrest and interview with the FBI. According to Montejo, all Defendant had to do to avail himself of his right to counsel was to invoke that right again. See Montejo, 129 S. Ct. at 2090 ("[A] defendant who does not want to speak to the police without counsel present need only say as much . . . ."). Defendant received his Miranda warnings and made a voluntary, knowing, and intelligent waiver of his right to counsel.[2] Moreover, even though Defendant invoked his right at the state level, he did not re-invoke when his right re-attached at the December 21, 2009 custodial interrogation more than two years later.[3] See Shatzer, 130 S. Ct. at 1222-23 (holding break in custody need only last fourteen days before police may re-initiate interrogation). The FBI complied with its

---

[2] The Court concludes the Government met its burden of showing the waiver was voluntary, knowing, and intelligent. The Court found Agent Lewis's testimony credible that he issued Defendant the required Miranda warnings, which thereby apprised Defendant of his rights and the consequences of abandoning those rights, and that Defendant verbally waived his rights. See North Carolina v. Butler, 441 U.S. 369, 373 (1979) (noting oral waiver is usually strong proof of waiver and that question is one of substance, not form). Further, it is clear from Defendant's own testimony that he was not coerced and his waiver was a free and deliberate choice.

[3] It is of no moment that Shatzer is a Fifth Amendment case even though Defendant asserts a violation of his Sixth Amendment right. Cf. Montejo, 129 S. Ct. at 2090 ("It is true . . . that the doctrine established by Miranda and Edwards is designed to protect Fifth Amendment, not Sixth Amendment, rights. But that is irrelevant. What matters is that these cases . . . protect the right to have counsel during custodial interrogation–which happens to be guaranteed . . . by two sources of law.").

obligation to advise Defendant of his right to counsel, which Defendant waived.

Although the Third Circuit has not yet had the opportunity to discuss the implications of Montejo and Shatzer, the Court finds support for its decision in another district court decision from within this Circuit. In United States v. Bonner, Judge Conner considered whether a defendant's right to counsel was violated when police interrogated him after the appointment of counsel. No. 09-0072-2, 2010 WL 1628989, at *2, *8 (M.D. Pa. Apr. 20, 2010). In May 2008, counsel was appointed to represent Bonner at a New York extradition hearing for Pennsylvania arrest warrants. Id. at *1-2. Before Pennsylvania detectives escorted Bonner to Pennsylvania, the court-appointed counsel advised him not to speak with the detectives, and admonished the police not to speak with his client. Id. When Bonner arrived in Pennsylvania, he was placed into custody and appointed Pennsylvania counsel. Id. at *3. In June 2008, an agent for the Bureau of Alcohol, Tobacco, and Firearms ("ATF") interviewed Bonner. Id. Bonner received and waived his Miranda rights, and he memorialized his waiver in writing. Id. Prior to Bonner signing the form, the ATF agent informed him that he was the target of an ATF investigation. Id.

The court found that Bonner's statements during the June 2008 interview were validly obtained – Bonner received Miranda warnings and decided to waive those rights. Id. at *7-8. The court did not credit Bonner's self-serving testimony that he invoked but was denied his right to counsel during the interview. Id. (citing Montejo, 129 S. Ct. at 2085-87).

In this case, Defendant was also represented by counsel with regard to state charges and was subsequently subjected to a custodial interrogation as part of a federal investigation. Thus, both Defendant's and Bonner's rights to counsel attached. Defendant then received his Miranda warnings and verbally waived his right to counsel, much like the defendant in Bonner, who

waived in writing. See also Butler, 441 U.S. at 373 (noting question of waiver is one of substance, not form). Further, Defendant, like Bonner, did not invoke his right to counsel during the interrogation.

Accordingly, the Court concludes that Defendant's statements were not obtained in violation of his Sixth Amendment right to counsel, were voluntary, and will not be excluded.

**B.    Prejudice**

Defendant argues, in the alternative, that his statements should be excluded under Federal Rule of Evidence 403 as unfairly prejudicial. (ECF No. 33.) He contends that allegations that the firearm at issue in this case was stolen from a home in North Carolina will inject uncharged allegations of theft and deflect the jury from the true issues.

As noted above, counsel advised that a stipulation had been arrived at as to the source of the firearm, which rendered the Government's Motion moot. Counsel also represented to the Court that the stipulation would obviate the need to allege the gun was stolen. Because Defendant's concern centers on allegations of theft, and the stipulation obviates that threat, the Court need not rule on this portion of Defendant's motion. Defendant may re-raise this issue by way of objection if the Government makes allegations of theft during the trial.

**VI.    Conclusion**

For the foregoing reasons, the Government's Motion to Admit Certain Proffered Testimony under Federal Rule Evidence 404(b) (ECF No. 32) will be **denied** as moot. Defendant's Motion to Suppress Incriminating Statements (ECF No. 33) will be **denied**. An appropriate Order follows.

O:\Todd\09-752 US v. Johnson\Johnson - Memo Mot Suppress - draft 4.wpd